UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case Number:

| | |
|---|---|
| IT'S A 10, INC., a Florida Corporation, <br><br> Plaintiffs, <br><br> v. <br><br> O'ROURKE HOLDINGS, LLC, a California Limited Liability Company, MICHAEL O'ROURKE, an Individual, and DOES 1-10, inclusive, <br><br> Defendants. | **Plaintiff Demands Trial by Jury** |

## COMPLAINT

Plaintiff **It's a 10, Inc.** by and through its undersigned attorneys, alleges and avers as follows:

### The Parties

1. Plaintiff **It's a 10, Inc.** is, and at all times material hereto has been, a corporation organized under the laws of the state of Florida and residing at 153 Nurmi Drive, Fort Lauderdale, Florida, 33301..

2. Plaintiff is informed and believes that Defendant **O'Rourke Holdings, LLC** is a California Limited Liability Company with its principal place of business located at 1135 North Topanga Canyon Blvd. in the city of Topanga, California 90290.

3. Plaintiff is informed and believes that Defendant **Michael O'Rourke** is an individual that resides in Topanga, California 90290. Upon information and belief, Defendant

Michael O'Rourke is directly or indirectly controlling the infringing activities of Defendant O'Rourke Holdings, Inc. alleged herein, and upon information and belief, acted as the alter ego of Defendant O'Rourke Holdings, Inc.

4. Plaintiff is informed, believes, and based upon such information and belief, alleges that Does 1 through 10 were the agents, servants, employees, or co-conspirators of Defendants, or were somehow otherwise responsible for the damages hereinafter alleged. Plaintiff will amend its pleadings when such true identities of such "Doe" Defendants are ascertained.

## Jurisdiction and Venue

5. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1338(a) and 15 U.S.C. § 1121 because this case arises under the Trademark Act of the United States, 15 U.S.C.A. §§ 1051 *et seq.*; Section 1332(a)(1) and is an action between citizens of different States in which the amount in controversy exceeds $75,000.

6. The Court also has jurisdiction of the unfair competition claims under the provisions of 28 U.S.C.A. § 1338(b) and supplemental jurisdiction pursuant to the provisions of 28 U.S.C. § 1367.

7. Personal jurisdiction is proper in this district because, on information and belief, Defendants have engaged in business activities in, and directed to, this district, and have intentionally committed a tortious act within this district or have committed a tortious act outside of the State of Florida causing injury to Plaintiff within this judicial district. Upon information and belief, Defendants have intentionally directed their infringing activities to the state of Florida and this judicial district, sell products within the State of Florida and in this judicial district, and the exercise of personal jurisdiction would be otherwise constitutionally permissible over Defendants.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to Plaintiff's claim occurred in this district, including, *inter alia*, Defendants committed trademark infringement in this district; Defendants' commercial website is accessible and intentionally directed to Florida consumers in this district; Plaintiff has its principal place of business in this district; Plaintiff sell its hair care products in this district and conducts a substantial part of its business in this district; and Plaintiff has been injured in this district by Defendants' infringing activities.

Plaintiff's Valuable Trademark Rights

9. Plaintiff is a nationally and internationally recognized leader in the innovation and sale of hair care products and is the owner of the famous "MIRACLE" and "MIRACLE LEAVE IN" hair care line, which was launched in 2006 by Carolyn Plummer and Scott Scharg and in less than a half decade, the small, start-up company of two employees has become a multi-million dollar corporation.

10. Plaintiff has invested considerable efforts, resources and financial expenditures promoting, marketing and selling their hair products under its distinctive MIRACLE-formative marks. Plaintiff has significant common law interests and rights in and to the term MIRACLE and MIRACLE LEAVE IN for hair care products and has continually and substantially used its MIRACLE-formative marks in interstate commerce for hair care products since at least as early as 2006.

11. Plaintiff owns the following U.S. Federal Trademark Registrations (collectively referred to as the "MIRACLE and MIRACLE LEAVE IN MARKS"):

| Mark | Reg. No. | Description of Goods |
|---|---|---|
| **MIRACLE LEAVE IN PRODUCTS** | 3,446,682 | IC 003. A full line of hair care products, namely, shampoos, conditioners, styling gels, hair lotions and hair sprays. |
| **MIRACLE LEAVE IN PLUS KERATIN** | 4,082,539 | IC 003. Hair care products, namely, styling, nourishing and protective sprays. |
| **MIRACLE SHAMPOO PLUS KERATIN** | 4,210,868 | IC 003. Hair care products, namely, shampoos. |
| **MIRACLE OIL PLUS KERATIN** | 4,210,866 | IC 003. Hair care products, namely, oil preparation for hair. |
| **MIRACLE VOLUME SHAMPOO** | 4,210,867 | IC 003. Hair care products, namely, shampoos. |
| **MIRACLE FINISHING SPRAY** | 4,210,865 | IC 003. Hair care products, namely, styling sprays. |
| **MIRACLE STYLING CREAM** | 4,210,796 | IC 003. Hair care styling aids, namely, hair creams. |
| **MIRACLE STYLING SERUM** | 4,006,825 | IC 003. Hair care products, namely, styling gels. |
| **MIRACLE MOISTURE SHAMPOO** | 3,761,012 | IC 003. Hair care products, namely, shampoos. |
| **MIRACLE SHINE SPRAY** | 3,760,956 | IC 003. Hair care products, namely, hair sprays. |
| **MIRACLE HAIR MASK** | 3,760,933 | IC 003. Hair care products, namely, a hair conditioner and strengthener. |
| **MIRACLE FIRM HOLD GEL** | 4,210,234 | IC 003.Hair care styling aids, namely, hair gels. |
| **MIRACLE DAILY CONDITIONER** | 3,974,756 | IC 003. Conditioners. |

12. Plaintiff's trademark registrations constitute constructive use of its marks throughout the United States and constructive notice to Defendants of Plaintiff's rights in the MIRACLE and MIRACLE LEAVE IN MARKS. A copy of each of Plaintiff's registrations for its MIRACLE and MIRACLE LEAVE IN MARKS is attached as **Exhibit A.**

13. Plaintiff also owns numerous U.S. Federal Trademark Applications for MIRACLE and MIRACLE LEAVE IN formative marks, including but not limited to **MIRACLE LEAVE-IN FOR BLONDES** (Ser. No. 85/630,289), **MIRACLE LEAVE IN LITE** (85/243/510); **MIRACLE CONDITIONER PLUS KERATIN** (Ser. No. 85/243,471); **MIRACLE LEAVE IN POTION PLUS KERATIN** (Ser. No. 85/630,284); **MIRACLE DRY SHAMPOO AND CONDITIONER IN ONE** (Ser. No. 85/643.946), **MIRACLE TEXTURE FIBER** (Ser. No. 76/703,187) and **MIRACLE VOLUME SHINE TREATMENT** (Ser. No. 85/643,953) – to name only a few.

14. Plaintiff has spent approximately $15 million to date on the advertising and promotion of its hair products under its MIRACLE and MIRACLE LEAVE IN MARKS and has invested an immeasurable amount of time and effort in the development of their unique brand and product line.

15. As a result of Plaintiff's considerable promotional efforts, it has achieved huge commercial success both in the United States and abroad in connection with its hair care product line, and the MIRACLE and MIRACLE LEAVE IN MARKS are famous and widely recognized to consumers in the beauty and hair care market.

16. Plaintiff's MIRACLE and MIRACLE LEAVE IN products have generated substantial attention and praise in various publications in the relevant industry, including unsolicited promotion of its MIRACLE and MIRACLE-LEAVE IN products in several top,

well-known publications, including but not limited to, *Cosmopolitan*, *Martha Stewart Wedding Magazine*, *People Magazine*, *US Magazine*, *In Style, Good Housekeeping, Star Magazine, Ladies' Home Journal, Redbook, Town & Style, Fitness Magazine, Lucky Magazine* and *Seventeen*. See examples of relevant publications attached as **Exhibit B**.

17. Moreover, Plaintiff's MIRACLE and MIRACLE LEAVE IN products have earned recognition among professional salons and consumers as a high-quality product, receiving glowing reviews not only from consumers, but celebrities alike.

18. Plaintiff sells its MIRACLE and MIRACLE LEAVE IN products to some of the largest distributors in the world, including distributors in this judicial district. The MIRACLE and MIRACLE LEAVE IN products are sold in countless professional hair salons worldwide.

19. Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS are distinctive and were distinctive at all times relevant to the acts of Defendants as alleged herein.

20. The MIRACLE and MIRACLE LEAVE IN MARKS and the goodwill associated therewith are of inestimable value to Plaintiff.

Defendants' Infringing Acts

21. Long subsequent to ownership, use and adoption of the MIRACLE and MIRACLE LEAVE IN MARKS by Plaintiff, and without Plaintiff's consent, Defendants adopted and began using the virtually identical mark "MIRACLE LEAVE IN CONDITIONER WEIGHTLESS DETANGLER" (hereinafter "Infringing Mark") in connection with goods identical to Plaintiff's goods, namely, leave in hair care products (hereinafter "Infringing Miracle Product"). Depictions of Defendants' Infringing Miracle Product is attached as **Exhibit C**.

22. Defendants' Infringing Miracle Product is comprised of the large prominent term MIRACLE with "Leave In Conditioner" in a smaller font below the term MIRACLE.

6

Defendants' mark is comprised of the term "MIRACLE" and "MIRACLE LEAVE IN" which is identical to Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS and for highly similar if not identical goods. Defendants have adopted a substantially identical mark to Plaintiff's marks, and Defendants' addition of the descriptive and/or generic term "weightless detangler" in a small font below its mark is merely generic and/or descriptive use and does not serve in any manner to reduce a likelihood of confusion.

23. Upon information and belief, Defendants advertise, promote, sell and/or distribute its Infringing Miracle Product in the same channels of trade and markets in which Plaintiff sells its products under the MIRACLE and MIRACLE LEAVE IN MARKS. Moreover, an internet search reveals Defendants' hair care products are sold on the same third-party websites as Plaintiff's hair care products.

24. Upon information and belief, Defendants intentionally adopted a mark that is confusingly similar to Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS in order to profit and trade on the reputation and goodwill associated with Plaintiff's marks. In point of fact, a principal owner of Plaintiff It's a 10, Inc. (Scott Scharg) was a former owner/employee of a company (Big Sexy Hair) that was majority owned by Defendant Michael O'Rourke. Their prior business relationship resulted in bitter litigation, and Plaintiff is informed and believes that Defendant Michael O'Rourke, for malicious and retaliatory reasons, intentionally infringed and continues to infringe upon Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS even after receipt of Plaintiff's cease and desist letter.

25. A reasonable inquiry and trademark search (even a basic search on the internet for the term MIRACLE) by Defendants prior to adopting its Infringing Mark would have revealed Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS as there are countless references to Plaintiff's famous products on the internet, which are immediately revealed upon a search for

MIRACLE or MIRACLE LEAVE IN hair products.  Further, given the prior business relationship between the parties, it would be disingenuous of Defendant O'Rourke to assert he did not know that Plaintiff was the owner of these distinctive Marks.

26. Moreover, it is inconceivable that Defendants, who are immersed within the exact same industry and target the same customers as Plaintiff, would not have known nor heard of Plaintiff's products in light of the fame of Plaintiff's MIRACLE and MIRACLE LEAVE IN products, the sales of Plaintiff's MIRACLE and MIRACLE LEAVE IN products in countless top beauty supply stores and hair salons throughout the United States, and the substantial promotion of the MIRACLE and MIRACLE LEAVE IN products, not only by Plaintiff, but by celebrities and numerous well-recognized third-party publications.

27. Plaintiff is informed, believes and thereon alleges that the activities of Defendants were and are done willfully in order to trade upon the goodwill of Plaintiff and with reckless disregard of Plaintiff's trademark rights and despite Defendants' actual and constructive knowledge that such conduct was, and presently is, in direct contravention of the rights of Plaintiff.

28. Upon information and belief, Defendants' sale of its Infringing Miracle Product is causing and will continue to cause real and irreparable harm to Plaintiff.  Plaintiff's MIRACLE and MIRACLE LEAVE IN products are recognized by consumers and professional salons throughout the United States as a high-quality product. Upon information and belief, Defendants' Infringing Miracle Product is new, unproven and constitutes an inferior product; further, both consumers and professional salon owners are likely to be confused as to the source of the Defendants' competing and confusingly similar product. Moreover, as owners or representatives of professional salons become aware of Defendants' inferior product, they will be reluctant to take on and/or purchase the Plaintiff's products bearing the MIRACLE and MIRACLE LEAVE

IN MARKS, not wanting their customers to believe they are servicing them with a lower quality product.  Hence, Plaintiff is likely to lose the business of customers as well as numerous professional salons if Defendants continue their sale of the Infringing Miracle Product.  This impact is real and irreparable, and felt in Florida, which is Plaintiff's principal place of business and where Plaintiff conducts a significant amount of business.

29. Plaintiff has no adequate remedy at law. Defendants' conduct has caused and, if allowed to continue, will continue to cause irreparable damage to Plaintiff's business, reputation and goodwill. Plaintiff's damages are not yet determined or ascertainable.

## COUNT I
### (Registered Trademark Infringement)
### (15 U.S.C. 1114)

30. Plaintiff repeats, re-alleges and incorporates by reference all of the allegations contained in paragraphs 1-29, supra, as if fully set forth herein.

31. Plaintiff is the owner of valid and subsisting federal trademark registrations for its MIRACLE and MIRACLE LEAVE IN MARKS and has continuously used its MIRACLE formative marks in connection with hair care products since at least as early as July of 2006.  A copy of Plaintiff's registrations for its MIRACLE and MIRACLE LEAVE IN MARKS is attached as **Exhibit A.**

32. Despite Plaintiff's prior rights in its MIRACLE and MIRACLE LEAVE IN MARKS, and without Plaintiff's authorization, Defendants used and are now using in commerce a confusingly similar, if not virtually identical, mark in the sale of goods that are identical to Plaintiff's goods in order to profit off the goodwill and reputation Plaintiff has established in association with its MIRACLE and MIRACLE LEAVE IN MARKS.

33. Defendants' use was intended to cause and is likely to continue to cause confusion, mistake and deception among consumers as to whether Defendants' Infringing Miracle Products are affiliated with, sponsored or approved by Plaintiff.

34. The foregoing acts of infringement have been and continue to be deliberate, willful and wanton, constituting an exceptional case within the meaning of 15 U.S.C. § 1117.

35. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business.

## COUNT II
### Federal Trademark Dilution
### (15 U.S.C. § 1125(c))

36. Plaintiff repeats, re-alleges and incorporates by reference all of the allegations contained in paragraphs 1-35, supra, as if fully set forth herein.

37. Defendants' use of a confusingly similar, if not virtually identical, mark to Plaintiff's distinctive and famous MIRACLE and MIRACLE LEAVE IN MARKS commenced after Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS became famous within the meaning of 15 U.S.C. § 1125(c) and further causes dilution of the distinctive quality of Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS, thereby constituting dilution of these marks;

38. Upon information and belief, Defendants had knowledge of Plaintiff's use and federal registration of the MIRACLE and MIRACLE LEAVE IN MARKS, and dilution of Plaintiff's marks was willful, especially in light of the prior history between the principal owners of Plaintiff It's a 10, Inc. and Defendant O'Rourke Holdings;

39. Plaintiff has been and continues to be damaged by Defendants' infringing activities.

## COUNT III
### (Federal Unfair Competition for False Designation and False Advertising Under 15 U.S.C. §1125(a))

40.     Plaintiff repeats, re-alleges and incorporates by reference all of the allegations contained in paragraphs 1-39, supra, as if fully set forth herein.

41.     Defendants' use in commerce of its confusingly similar mark MIRACLE LEAVE IN CONDITIONER WEIGHTLESS DETANGLER in order to profit off the goodwill and reputation associated with Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS was intended to cause, and is likely to continue to cause confusion, mistake and deception among consumers as to whether Defendants' Infringing Miracle Products are affiliated with, sponsored or approved by Plaintiff.

42.     The foregoing acts of Defendants constitute a false designation of origin, unfair business practices and false and misleading descriptions and representations of fact to consumers, all in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

## COUNT IV
### (COMMON LAW UNFAIR COMPETITION UNDER FLORIDA LAW)

43.     Plaintiff repeats, re-alleges and incorporates by reference all of the allegations contained in paragraphs 1-42, supra, as if fully set forth herein.

44.     As a result of Defendants' unlawful acts as described herein, Defendants have intentionally misappropriated valuable property rights of Plaintiff in order to trade on the goodwill and reputation associated with Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS. Defendants' use of its Infringing Mark is in violation of Florida state law;

45. Defendants use of its Infringing Mark is likely to mislead customers to believe that Defendants' goods have been sponsored, approved, authorized or licensed by Plaintiff or are in some way affiliated or connected with Plaintiff.

46. Defendant's use of the Miracle Leave In Marks is with constructive and actual knowledge of Plaintiff's prior use of its MIRACLE and MIRACLE LEAVE IN MARKS. A reasonable inquiry and trademark search by Defendants prior to adopting its strikingly similar mark would have revealed Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS. By appropriating the goodwill of Plaintiff's trademarks, Defendants unjustly and unfairly competed with Plaintiff, benefited themselves in so doing, and damaged Plaintiff to an extent to be proven at the time of trial, thereby further violating the common law of unfair competition of Florida.

## COUNT V
## COMMON LAW TRADEMARK INFRINGEMENT UNDER FLORIDA LAW

47. Plaintiff repeats, re-alleges and incorporates by reference all of the allegations contained in paragraphs 1-46, <u>supra</u>, as if fully set forth herein.

48. Defendants' use in commerce of its confusingly similar mark MIRACLE LEAVE IN CONDITIONER WEIGHTLESS DETANGLER in order to profit off the goodwill and reputation associated with Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS was intended to cause, and is likely to continue to cause confusion, mistake and deception among consumers as to whether Defendants' Infringing Miracle Products are affiliated with, sponsored or approved by Plaintiff.

49. As a direct and proximate result of Defendants' infringement, Plaintiff has suffered, and will continue to suffer, monetary loss and irreparable injury to its business.

## COUNT VII
## Unjust Enrichment

50. Defendants intentionally used and continue to use a mark confusingly similar, if not nearly identical to Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS, in order to divert consumers to Defendants' products and the purchase of Defendants' Infringing Miracle Product and to profit off the goodwill associated with Plaintiff's marks. As a result of Defendants' infringing activities, a monetary benefit has been conferred upon Defendants, Defendants have received and have knowledge of such monetary benefit, and Defendants voluntarily realized and retained such benefit;

51. Defendants have been unjustly enriched at Plaintiff's expense, and the present circumstances as well as principles of equity are such that it would be inequitable to allow Defendants to retain such monetary benefits without requiring the Defendants to make restitution to Plaintiff for damages related thereto.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands:

1. That Defendants, their agents, servants, employees, proxies, attorneys, representatives, successors and assigns and all persons, firms, or corporations in active concert or participation with Defendant be enjoined and restrained preliminarily and permanently from:

(a) using Defendants' infringing mark "Miracle Leave In Conditioner Weightless Detangler";

(b) from directly or indirectly infringing Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS in any manner, including on or in connection with the manufacture, sale, advertisement, distribution or solicitation of any mark that is confusingly similar to Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS;

(c) using in any way Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS or any name or marks similar thereto, or any reproduction, copy, or colorable imitation of said name or marks in connection with Defendants' goods and services, or the advertisement, sale, offer for sale or distribution of any goods or services which infringe said names or marks;

(d) using any mark or trade name or engaging in any conduct that tends to falsely represent, or is likely to confuse, mislead, or deceive purchasers, Defendants', customers, or members of the public, that goods and services offered by Defendants originate from Plaintiff, or that said goods or services have been sponsored, approved, or licensed by or associated with Plaintiffs or are in some way connected or affiliated with Plaintiffs;

(e) otherwise competing unfairly with Plaintiffs in any manner; and

(f) diluting and infringing Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS trademarks and damaging Plaintiffs' goodwill, reputation, and business.

2. That Defendants be required to immediately cease and desist from all sales of its Miracle Leave In Conditioner Weightless Detangler product and to provide for destruction to Plaintiff's counsel all copies and reproductions in its possession or under its control of any goods and promotional and advertising material, and any other unauthorized items which reproduce, copy, bear or use the Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS or any derivative or confusingly similar mark, including, but not limited to, the mark "Miracle Leave In Conditioner Weightless Detangler".

3. That Defendants be required to account for and to pay to Plaintiffs all of Defendants' profits and all of Plaintiff's damages resulting from Defendants' infringement of Plaintiff's MIRACLE and MIRACLE LEAVE IN MARKS and unfairly competitive activities, inclusive of disgorgement of all profits obtained by Defendants to date for sale of its Miracle Leave In Weightless Detangler.

4. That Plaintiff be awarded its actual damages caused by Defendants' unlawful conduct;

5. That Plaintiff recovers from Defendants treble damages for Defendants' willful infringement of Plaintiff's MIRACLE and MIRACLE LEAVE IN PRODUCTS;

6. That Plaintiff recovers from Defendants punitive damages as provided under the law and according to proof;

7. That Plaintiff recovers from Defendant their costs of suit, reasonable attorneys' fees, and prejudgment interest as provided by law; and

8. That Plaintiff has all other and further relief as the Court may deem just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues triable to a jury.

Dated: October 26, 2012

Respectfully submitted,

*Michael J. Sacks*
_____
Michael Sacks  FBN: 65625
Brush & Sacks
7210 Wisteria Avenue
Parkland, FL 33076
(954)575-8691
email: msacks@bellsouth.net

OF COUNSEL:
Edward P. Kelly
Merry L. Biggerstaff
Tiajoloff & Kelly LLP
The Chrysler Building, 37th floor
405 Lexington Avenue
New York, New York 10174
212 490 3285
212 490 3295 (fax)